7652. WILLIAMS *v.* BOSTON OIL AND GUANO CO.

1. Cottonseed meal is a "commercial fertilizer" and "fertilizer material" within the meaning of the act of the General Assembly, approved August 22, 1911 (Acts 1911, pp. 172, 173; Park's Ann. Code, §§ 1778 (a), 1778 (b), 1778 (c), 1778 (d), and 1778 (e)).
2. The petition set forth a cause of action, and the court erred in dismissing it on general demurrer.

DECIDED JANUARY 23, 1917.

Complaint; from city court of Thomasville—Judge W. H. Hammond. June 21, 1916.

*Merrill & Grantham, Branch & Snow,* for plaintiff.

*Titus, Dekle & Hopkins,* for defendant.

BROYLES, P. J. W. W. Williams brought suit against the Boston Oil and Guano Company for damages, under the act of the General Assembly, approved August 22, 1911, regulating the branding and sale of commercial fertilizers and fertilizer material. The petition as amended alleged that the defendant sold to the plaintiff 50 tons of cottonseed meal, that this meal had fallen more than 3 per cent. below its guaranteed and commercial value, that it did not contain 6.18 per cent. nitrogen (equivalent to 7.50 per cent. ammonia) as branded on the sacks and as required by law, but that it contained only 5.45 per cent. nitrogen, a deficiency of 10.5 per cent. below its guaranteed analysis as branded and tagged on the packages. The petition alleged further that the cottonseed meal *was purchased by the plaintiff as commercial fertilizer,* and that *"it is commercial fertilizer and fertilizer material, and is so used."* The plaintiff sought to recover the penalty prescribed by the act, to wit, 25 per cent. of the purchase-price, in addition to the shortage in the commercial value of the fertilizer. The court sustained a general demurrer and dismissed the suit, and the plaintiff excepted.

In our judgment the petition set forth a cause of action and was not subject to general demurrer. While the act of the General

Assembly, approved July 8, 1910 (Acts 1910, p. 82), deals specifically with the branding and sale of cottonseed meal, we do not think it is the exclusive and only legislative regulation of the branding and sale of such meal *when it is sold as a commercial fertilizer, or as fertilizer material.* In that act the branding and sale of cottonseed meal is regulated not only when it is sold as feedstuff, but also when it is sold *as a commercial fertilizer,* as is specifically declared in section 1. It is clear, therefore, from this language, that the legislature recognized that cottonseed meal was, under certain circumstances, a "commercial fertilizer." That act makes it a misdemeanor for any one to violate its provisions, but fails to furnish any adequate remedy for damage inflicted upon the purchaser of cottonseed meal which is falsely branded, and the actual commercial value of which is below its guaranteed commercial value. A subsequent statute (Acts 1911, pp. 172, 173, sec. 2) provides a remedy in damages to the purchaser for the false branding and the deficiency in value of *"any commercial fertilizer, or fertilizer material sold in this State."* In our opinion the latter statute was intended by the legislature to be supplemented and additional to all other acts upon the same subject-matter, including the act of 1910, as is in fact shown by the language in section 5 thereof. The general trend of legislation in Georgia upon the subject of the sale of fertilizers has been to safeguard and protect *to the greatest extent possible* the buyer and user of fertilizers, and to make it "hard sledding" for the dishonest manufacturer or dealer, both by making the false branding and fraudulent sale of inferior fertilizers a penal offense, and by providing for the recovery of damages in a civil suit by the person so defrauded. And our courts of last resort have uniformly interpreted the various acts upon this subject in the light of that legislative intention.

It is insisted by counsel for the defendant in error that cottonseed meal is not a "commercial fertilizer" within the meaning of the act of 1911, for the reason that it does not contain either phosphoric acid or potash, and that the caption of the act and section 1 thereof show that it was the intention of the legislature to regulate therein the branding and sale of such commercial fertilizers only as contain, or are designed to develop, as plant food, phosphoric acid, potash, and nitrogen. This court, as a matter of

law, has no knowledge of the ingredients of cottonseed meal, but the official bulletin issued by the department of agriculture of this State (Serial No. 57, Season 1911-1912, p. 41) contains a report from the State Chemist which shows that, as a matter of fact, cottonseed meal not only contains nitrogen, but also phosphoric acid and potash in an appreciable amount. Irrespective, however, of the question whether it does or not, we do not think that the legislative intent was to confine the operation of the act of 1911 to such commercial fertilizers only as contain, or are designed to develop, as plant food, phosphoric acid, potash, and nitrogen, but, in our opinion, it was intended, as shown by the broad language in sections 2, 3, 4, and 5 of the act, and especially of section 2, to apply its provisions to "any commercial fertilizer, or fertilizer material sold in this State." It is a matter of common knowledge, of which this court will take judicial cognizance, that cottonseed meal is used extensively in this State, not only as fertilizer material, in the making and blending of commercial fertilizers, but as a commercial fertilizer in itself; and, the petition in this case alleging that the cottonseed meal was purchased by the plaintiff as a commercial fertilizer, the court erred in dismissing the petition on general demurrer.

*Judgment reversed. Jenkins and Bloodworth, JJ., concur.*